The Woodruff Hardware Furniture Company was plaintiff in the court below and brought suit against B. *Page 15 
C. George Company, a partnership composed of B.C. George and C.W. George, and alleged that on the first day of April, 1929, the said B.C. George Company was indebted to the said Woodruff Hardware Furniture Company, Inc., in the sum of eight hundred fifty-two dollars and sixty-one cents, for goods, wares, and merchandise before that time sold and delivered to the said B.C. George Company by the plaintiff at the special instance and request of the said B.C. George Company, an itemized account of which was filed with the declaration. It was further alleged that all of the goods, wares, and merchandise were to be paid for on the first day of the month immediately following the month during which same were purchased by and delivered to the said B.C. George Company, and to so pay, the said B.C. George Company, at such time, agreed and promised; and that no payment had been made on the account, and that same was past due and unpaid and owing the said Woodruff Hardware Furniture Company by the defendant. The account attached was sworn to by the president of the hardware company. Many items of the account were shown to have been purchased on order of or purchased by W.S. King.
The defendant pleaded that it did not owe the amount exhibited against it, nor any item thereof; that the account showed on its face that the items were purchased by W.S. King, and that W.S. King had no authority from the defendant to purchase the said items from the plaintiff or from any other person, and charged to the account of the defendant; that King had no authority from the defendant, either express or implied, to purchase either of the said items, and that no other person had authority from this defendant, either express or implied, to purchase the said items, or any part thereof, or either item thereof, for the account of this defendant, and that this defendant is in no way or manner obligated *Page 16 
to pay the said account, or any part thereof, nor is it indebted to the plaintiff in the sum sued on in this cause, or any other sum. This plea was duly sworn to by C.W. George, a member of the partnership, who stated on oath that he is familiar with the facts and authorized to make the oath, and the matters and things set forth in the foregoing plea are true and correct, as therein stated.
For replication to this plea the plaintiff says that B.C. George Company, does owe the amount exhibited against it by the plaintiff in said cause, and each item thereof; that the items purchased by W.S. King were purchased under the authority and direction of B.C. George Company, and that said W.S. King had the authority to purchase all of said items for B.C. George 
Company, and to charge same to the account of B.C. George 
Company; that Woodruff Hardware Furniture Company was authorized by B.C. George Company, or its duly authorized agent, to sell and deliver said items to W.S. King for B.C. George Company, and to charge same to the account of B.C. George Company; that all of the said items were used in the business of B.C. George Company, and that the defendant B.C. George Company is obliged to pay the said account, and is indebteded to plaintiff in the sum sued on, and of this it puts itself upon the country.
On trial it was stated: "It is agreed in this case that all of the items contained in the account sued on were sold and delivered by the plaintiff, and that the question of the correctness of each item and the price thereof is not questioned. It is further agreed that four hundred eighty-two dollars and forty-nine cents of the account sued on went into the company contract and that the defendants are liable for that amount, and that a judgment should be entered against them for that in any event. As to the other items sued on the only question involved is whether or not the parties purchasing the same were *Page 17 
liable for it or whether they were properly and correctly bought and obtained on the credit of the defendants, and whether or not the defendants are liable for it."
The plaintiff introduced as a witness R.C. Wilson, connected with the J.W. Rogers Lumber Company, who testified that he became acquainted with B.C. George of the firm of B.C. George Company, in November, 1928, when they began the construction of the road from Canton to Jackson and were purchasing material from the Rogers Lumber Company for use in said road, and that Mr. George came to the lumber company for the purpose of purchasing material from the said lumber company; that he was accompanied by Mr. King, and that Mr. George represented Mr. King as his agent, or foreman on that job; that Mr. B.C. George asked the witness to take Mr. King to other places and introduce Mr. King as the agent and representative of the B.C. George Company for the purpose of purchasing equipment for B.C. George Company; that B.C. George asked him to carry King up town and introduce him to a hardware company and an oil company, and tell them to let Mr. King have what he wanted; that they referred to some equipment for a camp, and that he carried Mr. King to Mr. Woodruff's store, Woodruff Hardware Furniture Company, and introduced him to Mr. Woodruff and told Mr. Woodruff to let Mr. King have what he wanted, and to charge it to B.C. George Company on Mr. King's order; that the Mr. Woodruff referred to was the president of the Woodruff Hardware Furniture Company. It also introduced orders on form, one of which reads as follows:
 "Purchasing Order No. ____.
"From B.C. George Company, Canton, Miss.
"To Woodruff Hdw. Co., Canton.
"Date Nov. 11
"Please deliver to us *Page 18 
 Quantity Description
 4 Cheap Blankets 4 Pillows
"B.C. George Co., By W.S. King.
"Authorized Signature:
"B.C. GEORGE "C.W. GEORGE "D.E. GEORGE "W.B. FRIEND."
Numerous orders for different goods and wares were introduced so signed and on similar forms.
C.W. George was introduced by the defendant and testified that he was a member of the firm of B.C. George Company, and that he had a road contract at Canton; that Mr. W.S. King was concrete foreman, but had nothing to do with the construction of the road outside of being concrete foreman, and that Mr. King had no authority to purchase goods and charge them to B.C. George 
Company; that they furnished King with expense accounts and made pay rolls every two weeks out of the office at Corinth; that he got funds when he called for them for necessary supplies; that B.C. George Company had nothing to do with the camp operated in connection with the said road, and that they had no camp in connection with the concrete crew at all; that Mr. G.R. Hawkins was given authority to purchase things for a camp; that Hawkins was the general superintendent and civil engineer in charge of the work; that no camp equipment was bought by Hawkins on said job; that they had a regular form for orders, and that the authorized signature printed on the form was B.C. George, C.W. George, D.E. George, and W.B. Friend, and that no person was authorized to sign orders, except those named on the forms; that one Mr. Gillespie was a form builder, a carpenter who was familiar with building the forms for the concrete work, and that he had no authority to charge *Page 19 
things to B.C. George Company, and that they had nothing to do with his camp; that they first learned of the account about the time it was closed, and that, immediately upon getting information that Mr. King had placed such orders, they discharged Mr. King, but that they had subsequently reemployed him, as he was a good man in his line of work; that he (C.W. George) was in an automobile wreck in November and was out of his office for a good while; that while he did not recognize legal liability on the order signed by Mr. King he was willing to pay for what went into the road construction and what they got benefit of in such work.
Mr. W.S. King was introduced as a witness for the defendant and also testified that he had no authority to sign orders for the B.C. George Company, nor to make purchases on their credit, but that he did sign the orders produced in the testimony, and that when B.C. George found it out he was discharged; that B.C. George Company had nothing to do with the operation of the camp, which was operated by Mr. B.C. Gillespie for his own account, and that B.C. George Company had no connection with the camp, and that he (King) had no authority to buy things on the authority of B.C. George Company for the camp. He also testified that he went with B.C. George to the Rogers Lumber Company and was there when Mr. B.C. George made some arrangement with the lumber company for lumber to be charged to B.C. George Company; that nothing was said that he recalls with reference to camp equipment, and that he did not hear Mr. George say anything to Mr. Wilson about introducing him to people and to have people accept his orders for goods to be charged to B.C. George Company. He stated that Mr. Wilson said to Mr. Woodruff that he (King) was with B.C. George Company, and that he (King) might want goods in Woodruff's line of business; that he and George went to the *Page 20 
lumber company together, and it was his first trip to Canton; that he saw Mr. Wilson that day with Mr. George, and he heard nothing said, except about lumber, cement, gravel, and sand, but that it could have been that George had a conversation which he did not hear; that he did not hear anything said by Mr. George to Mr. Wilson about introducing him, and that he did not mention that in King's presence; that Mr. George arranged and gave him authority to buy material from the Rogers Lumber Company, and that Mr. George made the trade to that effect with Mr. Wilson. He testified, as the reason for making the account and giving the orders, that he was there in charge and when Mr. Burt George left he stated that by the time he (King) got started C.W. George would be there, and the next he heard was that C.W. George had been in a car wreck and his shoulder was broken, and that neither B.C. George nor C.W. George were around there until near the first of February; that he was left in charge of the concrete work; that the only authority he had to purchase things was verbal authority at the Rogers Lumber Company; that, if Mr. George knew anything about him buying things, he (King) did not know about it until about the first of March when he was fired, and he would not say that George knew of such purchases; that he was fired because he made these purchases, and that he was out of employment about sixty days after being fired.
It appeared that the accounts, other than the four hundred eighty-two dollars and forty-nine cents agreed upon as above stated, were either charged on orders given for the camp signed by W.S. King or were items for which no order was given. The plaintiff's testimony further showed that the plaintiff made statements to B.C. George Company at Corinth on the first of each month, and testimony introduced by B.C. George, or the bookkeeper of the office, was to the effect that no such *Page 21 
statements were received at the office. The amounts for which no orders were given were checked and deducted from the amount sued for, which left a balance of seven hundred sixty-three dollars and eleven cents. The court below granted a peremptory instruction for the plaintiff for this amount, and a peremptory instruction for the defendant for the items checked off, for which no orders were given, and judgment was entered in accordance with the peremptory instruction; from which B.C. George Company appeals.
As the testimony was direct and emphatic that King had no authority to purchase on order forms of B.C. George Company, or otherwise, the merchandise shown to have been bought from the plaintiff by King, and as the orders show on their face that only certain designated persons should sign them, we think the question should have been submitted to the jury, on the testimony of Mr. Wilson that B.C. George Company authorized him to introduce King to a hardware firm and an oil firm and have goods charged on King's orders, and King's testimony that he was present and that such conversation did not happen between George and Wilson within his hearing, for decision as to whether such statement was in fact made by B.C. George. Neither Mr. Woodruff, president of the Woodruff Hardware Furniture Company, nor B.C. George was introduced as a witness in the cause, and the pleadings did not show what character of proof would be necessary to constitute the liability other than the itemized account. The judge was in error in peremptorily disposing of the issues as above stated. It was also a question of fact as to whether or not statements were mailed to B.C. George Company by the Woodruff Hardware Furniture Company, and whether or not received by them. Such conflicts as this in the evidence should be submitted for the jury's determination. We think it would be the duty of the plaintiff *Page 22 
to inquire about the authority of King, the face of the order having names thereon which were authorized to sign, and King's name not being among them, unless Wilson made the statement to Mr. Woodruff testified to by Mr. Wilson and denied by King, so that B.C. George Company would be informed of the orders being given by Mr. King within a reasonable time.
For the error indicated, the judgment will be reversed, and the cause remanded for a new trial.
Reversed and remanded.